J. H. DONNELL *vs.* CANADIAN PACIFIC RAILWAY COMPANY.

Aroostook.    Opinion November 14, 1912.

*Agents.    Arrangements for Storage.    Common Carriers.    Conversion.*
*Demand.    Detainer.    Dominion.    Trover.*

An action of trover for the conversion of certain personal property which was destroyed by fire in the freight-house at Presque Isle, belonging to the defendant. The plaintiff for several years prior to the fire June 7, 1909, had an arrangement with the defendant that the bulk of his freight coming in car load lots over the defendant's road should be set apart in a portion of its freight-house and kept separate from goods of other shippers and to allow the plaintiff and his servants at any time to remove them. The plaintiff, and his agents and servants, had, previous to the fire, been furnished with a key to the freight-house whenever called for for the purpose of storing and removing goods from the storehouse. Upon the day of the fire, the plaintiff's agent went to the agent of the defendant for the key, but the agent refused to deliver to him the key, and the plaintiff did not succeed in getting the key until the burning of the freight-house was imminent.

*Held:*  1.  That while the defendant's agent did not refuse to deliver the goods, nor claim title to them, under the circumstances he exercised a dominion over them in refusing the key.

2.  Upon the plaintiff's demand emphasized by the immediate presence of dangerous conditions, almost any hesitancy or delay to give him, the quickest possible possession of his goods was wrongful.

3.  When a person exercises a dominion over personal property inconsistent with the possession of the owner, in consequence of which the property is lost or destroyed, the exercise of such dominion constitutes a conversion.

On report. Judgment for plaintiff for twenty-six hundred dollars and interest from date of the writ.

This is an action of trover for the conversion of personal property consisting of various kinds of merchandise of the alleged value

of twenty-six hundred dollars.  Plea general issue.

At the conclusion of the evidence the case was reported to the Law Court for determination upon so much of the evidence as is legally admissible.

*Hersey & Barnes, and Shaw & Shaw,* for plaintiff.

*E. C. Ryder,* for defendant.

SITTING: WHITEHOUSE, C. J., SPEAR, CORNISH, BIRD, HALEY, HANSON, JJ.

SPEAR, J.  This case, coming up on report, imposes jury powers upon the court.  It is the opinion of the court that the following facts may be found upon a preponderance of evidence.  This is an action of trover for the conversion of personal property consisting of various kinds of merchandise of the alleged value of $2600, the amount of which is not in dispute.  The plaintiff was a large dealer in groceries, provisions and feed in the village of Presque Isle and had been so engaged for at least seven years.  The defendant is a railroad corporation having a station, freight-house and place of business at Presque Isle.

The defendant company and the Bangor & Aroostook Railroad Company are competing roads as common carriers of freight at Presque Isle.  Prior to the 7th day of June, 1909 for several years the plaintiff had an agreement with the defendant that the bulk of his freight coming in car load lots should come over the defendant road, and that in consideration for this business the defendant should set apart a portion of its freight-house for the storage of his goods and keep them separate from the goods of other shippers, and allow the plaintiff and his servants at any time to remove them, for the storage of which no charge was to be made.  This arrangement was admitted by the defendant's agent, and had existed for some years prior to the date of the fire.  As a necessary result, the defendant, his agents and employees had been furnished with a key whenever called for for the purpose of storing, and removing, goods from the storehouse.  Previous to the day of the fire neither the plaintiff nor anyone of his employees had ever been refused the use of the key, upon request, to give them access to the building.

On the afternoon of June 7, 1909, a fire started in the western part of the village of Presque Isle about one-half mile from the

freight and storehouse of the defendant, which rapidly developed, threatened, and finally consumed a large part of, the village, including the freight-house in question. At this time the goods alleged to have been converted, together with five barrels of sugar which were removed, were in the storehouse without insurance. When the plaintiff became alarmed at the progress of the fire he took his team with three servants and proceeded to the storehouse. Immediately upon arriving he sent one of his men, Mr. McKenney, who had long been a clerk in his store and well known to the defendant's agent as his clerk, to obtain the key to the storehouse to enable him to unlock it and remove his goods to a place of safety. This was from three-quarters of an hour to an hour before the fire was communicated to the freight-house. The defendant's agent, although he said in his testimony "I presumed he wanted the key for the purpose of removing his goods" refused to deliver the key. He also says that he gave Mr. McKenney no reasons whatever for refusing him the key. McKenney returned without the key, and the plaintiff himself then proceeded to the station, found the defendant's agent and requested the key. As to what occurred between the plaintiff and the defendant's agent with reference to what seems to have been a fatal delay in not turning over the key to the plaintiff, there appears to be a material conflict in the testimony, which must be solved in the light of the circumstances and probabilities, because it is not controverted that the plaintiff, had he been given the key when he first approached the agent, would have been able to save all his goods. Therefore, the loss of the time between the request for the key and receiving it was responsible for the burning of the goods. The defendant contends that this loss of time was due to the voluntary concession of the plaintiff based upon the conclusion that the storehouse was not in danger. The plaintiff, however, contends that he was unable to obtain the key until the burning of the warehouse was imminent. In corroboration of the plaintiff's contention it should be observed that the defendant's agent admits that the first time the plaintiff made demand on him for the key he refused to deliver it "except on condition that he would become responsible for any goods lost outside of his own."

We are of the opinion that the plaintiff's contention must be sustained. The conditions connected with the res gestae of the

situation are of paramount importance in determining the value of the evidence found in the conflicting testimony touching this question of delay. The plaintiff had uninsured over three thousand dollars' worth of merchandise in the storehouse, a conflagration was raging in the village, he had become alarmed to the extent of coming with his team and three men to the storehouse for the purpose of removing his goods; he had immediately upon arriving sent one of his employees to obtain the key to enable him to open the storehouse; the employee returned without the key. He, himself, then at once proceeded to the railroad station for the same purpose. It is not controverted that he promptly demanded the key. It is equally true that the storehouse was on fire before he reached it with the key. That under these circumstances he dallied away three-quarters of an hour and then after obtaining the key waited fifteen minutes, according to the agent's testimony, before he proceeded to the storehouse, with the fire so near that the storehouse was actually burning before he arrived with the key, was inconsistent with the probable action of any sane and interested man. We, therefore, think that the plaintiff's testimony, corroborated by the probabilities, sustains the burden of proof in favor of his contention as to the cause of the delay. Upon this conclusion of fact, did the refusal of the defendant to deliver the key to the plaintiff constitute a conversion?

Again the circumstances under which the plaintiff was acting constitute an important element in determining, not only the facts, but his legal rights upon the question of conversion. Under ordinary conditions we should gravely doubt if the acts of the defendant's agent could be regarded as tantamount to a conversion. The right to possession of goods in the hands of a bailee may depend, however, so intimately upon immediate surrender that a delay of a few minutes, even, may result in the difference between salvage and partial or total loss. And the typical illustration of this rule would occur in case of fire. It is the opinion of the court that it did occur in the case at bar. While the defendant's agent did not refuse to deliver the goods, nor claim title in them, nevertheless, under the circumstances he exercised a dominion over them in refusing the key, more disastrous to the plaintiff than an ordinary delay for a month to allow him to enter the storehouse. Upon the

plaintiff's demand, emphasized by the immediate presence of dangerous conditions, it would seem that almost any hesitancy or delay to give him the quickest possible possession of his goods, was wrongful. And, as we understand the law, a wrongful detention upon proper demand will support an action of trover. In *Fifield v. Me. Central R. R. Co.,* 62 Maine, 77, it is said: "To constitute it there must have been either a wrongful taking, or wrongful detainer, or an illegal using, or a misusing, or an illegal assumption of ownership." In *Fernald* v. *Chase,* 37 Maine, 289, it is said: "To make out a conversion, there must be proof of a wrongful possession, or of the exercise of a dominion over it, in exclusion or defiance of the owner's rights, or of an unauthorized and injurious use, or of a wrongful detention after demand." To the same effect is *Fuller* v. *Tabor,* 39 Maine, 519. Cooley on Torts, 524, says: "Any distinct act of dominion wrongfully exerted over one's property in defiance of his right or inconsistent with it is a conversion. . . . It is not necessary that it should be shown that he has applied it to his own use. Does he exercise a dominion over it in exclusion or in defiance of the plaintiff's right? If he does, that is in law a conversion, be it either his own or another person's use." We think the rule is too well established to require further citation that when one person exercises a dominion over personal property inconsistent with the possession of the owner, in consequence of which the property is lost or destroyed, the exercise of such dominion constitutes a conversion.

Nor in the case at bar can the intention with which the defendant's agent withheld the key become material. 28 Am. Enc. Sec. Edition, 681, and cases cited. 38 Cyc., 2029. See also *England* v. *Bulkley,* 25 Ill., 224.

In accordance with the terms of the report the entry must be,

*Judgment for the plaintiff for Twenty-six hundred dollars and interest from the date of the writ.*