ifestly improper to permit this report to stand as a performance of the conditions of the stipulation. The authorities cited by Mr. Justice Kellogg, in his opinion on the original motion, fully justify the order, and these are in harmony with Carnegie Steel Co. v. Cambria Iron Co., 185 U. S. 403, 444, 22 Sup. Ct. 698, 46 L. Ed. 968.

The orders appealed from should be affirmed, with $10 costs and disbursements. All concur; KELLOGG, J., in result, in opinion in which SMITH, P. J., and LYON, J., concur.

JOHN M. KELLOGG, J. (concurring in result). [1, 2] Evidently neither party contemplated that the four appraisers aside from Mr. Wheeler should be disinterested. The defendant selected two partisans; the plaintiffs selected one. Neither is therefore in a position to claim that the other did not select impartial appraisers. The five appraisers were to act as a board, which implies that the full board was to act, having the benefit of the knowledge, arguments, and suggestions of each member. I think Mr. Whitney and the defendant's appraisers prevented the board, as such, from making the appraisal contemplated by the stipulation. They precluded a consideration and discussion of the matters by the board as such. I concur in the opinion of Mr. Justice Borst that the arbitrators did not act as a board according to the true spirit of the stipulation. The stipulation provides that the appraisers may call upon either party for any data, copies of contracts or documents which they may require in making the appraisal. If the appraisers were simply to determine the amount of physical damage done by the fire upon lot 19, it is difficult to see what contracts they would require from the parties. After the fire the plaintiff had contracted with the Kelloggs by which they were to take, on certain conditions, certain of the damaged timber. It was the right and the duty of the appraisers to take that contract into consideration. If the plaintiff was receiving for the timber, after the fire, all it was worth before the fire, that fact shows that the damages could not be large. I think the stipulation meant that the appraisers were not to determine the question of liability, but were to fix the damages, leaving the question of liability to be determined by the evidence, and if the defendant was found liable the decision of the appraisers as to the amount would furnish the measure of damages. It seems to me, therefore, that the Kellogg contract was a proper matter for consideration by the commission.

===

(89 Misc. Rep. 252.)

DETMER–WALLEN CO. v. DELAWARE, L. & W. R. CO.

(Supreme Court, Trial Term, New York County. February, 1915.)

1. COURTS ⬤═489—TRANSPORTATION CONTRACTS—ACTION FOR BREACH—JURISDICTION OF STATE COURTS,

While all questions arising under the Interstate Commerce Act Feb. 4, 1887, c. 104, 24 Stat. 379 (Comp. St. 1913, §§ 8563–8604), are controlled by the decisions of the federal courts, such act, as amended, does not deprive state courts of their power to act with respect to complaints

⬤═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

arising out of an interstate carrier's failure to carry out its transportation contracts promptly and safely and perform its duties as a common carrier.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 404, 1324–1330, 1333–1341, 1372–1374; Dec. Dig. ☞489.]

2. CARRIERS ☞105—DELAYED SHIPMENT—MEASURE OF DAMAGES.

Where a carrier not only admits its failure to carry goods by the prescribed route, but admits a delay of 28 days before arrival of the goods at their destination, the measure of damages therefor is the difference between the value of the goods when delivered and when they should have been delivered.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 451–458; Dec. Dig. ☞105.]

3. CARRIERS ☞105—DELAYED SHIPMENT—DAMAGES RECOVERABLE—LOSS OF PROFITS—CONTEMPLATION OF PARTIES.

Where, in an action for damages from delay in transporting a shipment, it appeared that the only difference in the value of the goods between the date when delivered and when they should have been delivered was their rental value, the shipper was not entitled to recover for loss of prospective profits, in the absence of an express provision therefor in the shipment contract or a direct notice showing clearly that such loss was within the expectation of the contracting parties.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 451–458; Dec. Dig. ☞105.]

4. DAMAGES ☞40—RIGHT TO RECOVER—CERTAINTY AS TO AMOUNT—PROSPECTIVE PROFITS.

That the amount of the damages from breach of a shipment contract through delay in transporting the shipment was uncertain did not preclude a recovery of compensatory damages, including loss of prospective profits, the amount of which was also uncertain, where it was certain that there were some damages.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 72–88; Dec. Dig. ☞40.]

Action by the Detmer-Wallen Company against the Delaware, Lackawanna & Western Railroad Company. Judgment for plaintiff.

Eli J. Blair, of New York City, for plaintiff.

F. W. Thomson and W. S. Jenney, both of New York City, for defendant.

DONNELLY, J. This action was brought by the plaintiff, a shipper of freight, against the defendant, a common carrier, to recover damages alleged to have been sustained because of a breach of contract. The alleged breach of contract was as follows: First, failure of the defendant to carry by the route prescribed by the contract; and, second, the failure of defendant to carry and offer delivery to consignee within a reasonable time. The parties duly waived the right of trial by jury, and the action was tried before the court without a jury.

[1] Upon the trial the defendant admitted that it failed to carry by the route prescribed by the contract, and also admitted that there was a delay of 28 days in the average scheduled time before the goods shipped arrived at the point of destination. As the defendant produced no evidence to show a legal excuse for said delay, the court must find, and does find, as a matter of fact, that there was a breach of contract upon

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

its part, as alleged by the plaintiff. The sole remaining question for the court to determine is the proper assessment of whatever lawful damages were proved by proper evidence to have been suffered by the plaintiff by reason of said breach of contract. The defendant contends that whatever damages are assessed in this case must be assessed in accordance with a measure which will harmonize with every provision of the Interstate Commerce Act, with the intent and spirit of the act, as construed by the federal courts, and that therefore the damages must be nominal, because to hold otherwise would tend to nullify the provisions of section 10 of that act (U. S. Comp. St. 1913, § 8574), in that it would permit the carrier, under the color of a payment for loss occasioned by a breach of contract or by its negligence, to make rebates to favored shippers. I do not believe that this position is well taken, as there is nothing in the act to indicate that the courts have been deprived of the power to act with respect to complaints that may arise out of the failure of carriers to carry out their contracts of transportation promptly and safely, and properly to perform their duties as common carriers. While it is true that, since the passage of that act in its amended form, Congress has taken over the subject of interstate shipment of merchandise and baggage, and its enactment supersedes state legislation so far as it goes, and while it is also true that there is a conflict of decisions, all questions arising under the provisions of said act are to be controlled by the reasoning laid down by the decisions of the United States courts. Adams Express Co. v. Croninger, 226 U. S. 491, 33 Sup. Ct. 148, 57 L. Ed. 314, 44 L. R. A. (N. S.) 257; Michigan C. R. R. Co. v. Vreeland, 227 U. S. 59, 33 Sup. Ct. 192, 57 L. Ed. 417, Ann. Cas. 1914C, 176; Barstow v. New York, N. H. & H. R. R. R. Co., 158 App. Div. 665, 143 N. Y. Supp. 983.

[2, 3] I know of no conflict of decisions between the courts of this state and the courts of the United States on the question of the measure of damages, where there is a breach such as disclosed by the facts of this case; that is, the difference between the value of the property shipped when delivered and when they should have been delivered. Sherman v. Hudson R. R. R. Co., 64 N. Y. 264; Katz v. Cleveland, C., C. & I. L. R. R. Co., 46 Misc. Rep. 259, 91 N. Y. Supp. 720; Bussey v. Memphis & Little Rock R. Co. (C. C.) 13 Fed. 330; Milne v. Douglass (C. C.) 17 Fed. 482; In re Petitions of Petersen (C. C.) 21 Fed. 885; Central Trust Co. v. Savannah & W. R. Co. (C. C.) 69 Fed. 683. The question then is: What is that difference? So far as the difference in the intrinsic value of the property is concerned, there was no difference between the dates in question, except a loss of value of its use, viz., its rental value. Therefore, unless the plaintiff is entitled to recover for loss of prospective profits, its recovery would be nominal. Such damages may not be recovered, unless by the terms of the contract, or by direct notice, they are within the expectation of the parties, so that it plainly appears that they were within the contemplation of the parties when the contract of shipment was made. Central Trust Co. v. Savannah & W. R. Co. (C. C.) 69 Fed. 683; Foster v. Cleveland, etc., R. R. Co. (C. C.) 56 Fed. 434; Hamilton v. McPherson, 28 N. Y. 72, 84 Am. Dec. 330; Katz v. Cleveland, C., C. & I. L. R. R. Co.,

supra, and cases there cited; and Rosenberg v. Delaware, L. & W. R. R. Co., 88 Misc. Rep. 1, 150 N. Y. Supp. 75.

It appears from the evidence that the plaintiff was engaged in the sale of manufactured woolens and tailors' trimmings to merchant tailors. These woolens were purchased from the plaintiff from samples. The woolen samples are mounted on cards, varying in size from 3¼ by 5¼ to 6 by 9 inches. For the purposes of sale, various materials and sizes are identified by numbers and descriptive matter printed on the cardboard to which samples are attached. These samples are prepared twice a year, once for the spring and summer season, which begins about January 1st and continues for six months, and again for the fall and winter season, which begins in June and ends in December. It also appears that plaintiff maintains various selling stores throughout the country; that samples at the beginning of each season are forwarded to these selling stores for distribution among the trade; that plaintiff conducts and did conduct such a store in December, 1909, in Los Angeles, Cal.; that at the beginning of each season there is, naturally, the usual competition for business; that the dealer whose samples arrive first is the competitor best in a position to offer goods for sale; that shortly prior to the beginning of each season, and some time before the year 1909, a representative of the defendant railroad called upon the plaintiff, soliciting its order to convey its samples to their destination, including Los Angeles; that the practice had continued for a long period of years; that defendants had been repeatedly told the nature of the plaintiff's business and the urgent necessity for haste in having goods arrive at the opening of each season; that, by reason of the long period of time during which the parties did business together, the defendant was thoroughly familiar with these facts. It likewise appears from the evidence that on December 23, 1909, the same representative of the defendant called upon the plaintiff soliciting its order to convey its samples for the ensuing year to the Los Angeles branch, which order was given; that the bill of lading described the goods as 23 cases of dry goods, sample cards, weighing 9,980 pounds; that the freight on this shipment, amounting to $229.40, was prepaid, and the route over which the goods were to travel to their destination was designated by the plaintiff and incorporated in the bill of lading. It is admitted by the defendant that the goods were misrouted and did not arrive at their destination until February 8, 1910, which was 28 days later than they should have arrived, if they had followed the route designated by the plaintiff. There is correspondence to the effect that the defendant had knowledge of the special reasons for the haste in the delivery of goods. It is evident, therefore, that the purposes for which these samples were to be used were contemplated by the parties to the contract, and that the defendant had knowledge of the necessity of delivering them by the route indicated in its contract, so that they would arrive in time for the opening of the winter season. They did not arrive in time for the opening of said season, and the plaintiff sustained damages.

[4] It is true that the amount of the damages is uncertain, but I believe that this case comes within the rule that, where damage is cer-

tain but the amount is uncertain, a recovery may be had, including loss of prospective profits, although the amount of said loss is uncertain (Wakeman v. Wheeler & Wilson Mfg. Co., 101 N. Y. 205, 4 N. E. 264, 54 Am. Rep. 676; Delafield v. J. K. Armsby Co., 62 App. Div. 262, 71 N. Y. Supp. 14; Dickinson v. Hart, 142 N. Y. 183, 36 N. E. 801), and therefore that the plaintiff should not be limited to the recovery of nominal damages because of their uncertainty in amount. The testimony discloses that the sales of the plaintiff at the Los Angeles store in the year preceding the delay from January 1st to February 9th amounted to $4,375.21; that the sales during the same period in the year of delay were $1,756.02; and that the sales during the same period for the following year were $4,431.30. There is also testimony to the effect that the plaintiff's profit on sales is 33⅓ per cent. By adding the sales of the year before and the year after the delay in delivery, we find that the total is $8,806.51, and that half of that would be the average sales for those two years. It is fair to assume from the evidence that, the conditions being the same had the samples been delivered on time, the sales for the month covered by the delay would have averaged at least $4,403.25. As a matter of fact, they amounted to $1,756.02, making a difference in average sales of $2,647.23. A third of this would amount to $882, which sum approximates the amount of profit which would have been realized had the goods been delivered on time. I accordingly find that the plaintiff has been damaged by reason of said breach of contract in the sum of $882 and direct judgment in its favor for said sum.

Judgment for plaintiff.

DAMAGES ⬤⟲189—BREACH OF CONTRACT—EVIDENCE.

