PECOS & N. T. RY. CO. v. PORTER. *
(No. 832.)

(Court of Civil Appeals of Texas. Amarillo Jan. 26, 1916. Rehearing Denied Feb. 23, 1916.)

1. COURTS ⟜489—JURISDICTION—INTERSTATE COMMERCE COMMISSION ACT.

The Interstate Commerce Act (Act Cong. Feb. 4, 1887, c. 104), providing, in section 22 (24 Stat. 387 [U. S. Comp. St. 1913, § 8595]), that nothing therein shall in any way abridge or alter the remedies existing at common law or by statute, but the provisions of the act are in addition to such remedies, does not deprive a state court of jurisdiction of an action against a carrier for conversion of an interstate shipment.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 404, 1324–1330, 1333–1341, 1372–1374; Dec. Dig. ⟜489.]

2. CARRIERS ⟜91 — TRANSPORTATION OF FREIGHT—CONVERSION OF SHIPMENT.

The refusal of a shipper to pay more than the contract rate for freight, which was less than the proper rate, does not affect his right to recover for conversion, where the carrier would not accept the proper rate, but sold the goods for its charges.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 338–355; Dec. Dig. ⟜91.]

3. CARRIERS ⟜94 — TRANSPORTATION OF FREIGHT—CONVERSION—NATURE OF ACTION.

An action against a carrier for damages on the demand of an excessive freight charge, which the shipper refused to pay, and the sale

⟜For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Application for writ of error pending in Supreme Court.

of the goods for the charges is one for conversion.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 367–395, 456; Dec. Dig. ☞94.]

4. CARRIERS ☞91 — TRANSPORTATION OF FREIGHT—"CONVERSION."

That the agent of a carrier demanded only a small amount in excess of the legal rate, and the demand was honestly made without wrongful intent, does not affect the shipper's right of recovery for conversion by the sale of the goods on refusal of the shipper to pay the charge; "conversion" being any distinct act or dominion wrongfully exerted over another's property in denial of his right or inconsistent with it.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 338–355; Dec. Dig. ☞91.

For other definitions, see Words and Phrases, First and Second Series, Conversion.]

5. TROVER AND CONVERSION ☞22—DEFENSES —GOOD FAITH.

In an action of trover and conversion, good faith cannot be shown as a defense, but only where exemplary damages are claimed, in mitigation thereof.

[Ed. Note.—For other cases, see Trover and Conversion, Cent. Dig. §§ 152–162, 167–169; Dec. Dig. ☞22.]

6. CARRIERS ☞94 — TRANSPORTATION OF FREIGHT—CONVERSION.

In an action for conversion by a carrier by sale of goods on refusal of shipper to pay excessive freight rate, refusal to submit to the jury an issue whether defendant's agent offered to rebill the car, letting the charges follow so that the shipper could pay the legal charge at the new destination, was proper.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 367–395, 456; Dec. Dig. ☞94.]

7. CARRIERS ☞94 — TRANSPORTATION OF FREIGHT—CONVERSION—EVIDENCE.

In an action for conversion by a carrier on refusal of the shipper to pay an excessive freight rate, the award of the Interstate Commerce Commission, determining the proper rate for the shipment, was admissible in evidence.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 367–395, 456; Dec. Dig. ☞94.]

8. EVIDENCE ☞80—PRESUMPTION—LAW OF OTHER STATE.

The right of action for loss of personal property passes to the father and mother of one dying unmarried without issue within the state; and, in the absence of proof to the contrary, it will be presumed that the same law applies in New Mexico.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 101; Dec. Dig. ☞80.]

9. ASSIGNMENTS ☞131 — ACTION BY ASSIGNEE—PLEADING.

An assignee of the father and mother of one who died in New Mexico unmarried and without issue, suing to recover for loss of personal property of decedent, need not allege that there was no administration on the decedent's estate in New Mexico, since an administrator appointed there could not sue in Texas, in view of Vernon's Sayles' Ann. Civ. St. 1914, art. 3209, providing for administration in Texas on the estate of a nonresident.

[Ed. Note.—For other cases, see Assignments, Cent. Dig. §§ 224–226; Dec. Dig. ☞131.]

10. CARRIERS ☞94 — TRANSPORTATION OF FREIGHT—CONVERSION.

In an action for conversion by a carrier by sale of the goods on refusal of the shipper to pay excessive freight, the fact that the shipper and his attorney purchased most of the property is immaterial.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 367–395, 456; Dec. Dig. ☞94.]

11. WITNESSES ☞37—COMPETENCY—KNOWLEDGE OF SUBJECT-MATTER.

In an action against a carrier for conversion, a witness' testimony that she could enumerate the various articles which were packed or prepared with her assistance, and that she was present and helped pack and load the wagons with the goods that were shipped, and that she testified from what she did and saw herself, shows that she was fully qualified to testify to the identity of the property.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 80–87; Dec. Dig. ☞37.]

Appeal from District Court, Deaf Smith County; M. J. R. Jackson, Special Judge.

Action by G. H. Porter against the Pecos & Northern Texas Railway Company. From judgment for plaintiff, defendant appeals. Affirmed.

See, also, 156 S. W. 267; 158 S. W. 564.

Madden, Trulove, Ryburn & Pipkin, of Amarillo, and Terry, Cavin & Mills, of Galveston, for appellant. Knight & Slaton and S. J. Dodson, all of Hereford, for appellee.

HALL, J. Appellee, B. M. Porter, in his own right, and as the assignee of the heirs of G. H. Porter and L. Cameron, sued the appellant for the conversion of a car of emigrant movables, transported by the St. Louis & San Francisco from Fletcher, Okl., to Quanah, Tex., by the Ft. Worth & Denver City Railway from Quanah to Amarillo, and by the appellant company from Amarillo to Bovina, in the month of January, 1907. A jury trial resulted in a judgment in favor of appellee for $2,940, with interest from the 23d day of November, 1914, the date of the judgment.

Appellee and his assignors had decided to remove from Fletcher, Okl., to Melrose, N. M., and applied to the agent of the initial carrier at their home station for a car in which to ship their goods and chattels. The car, having been furnished, was loaded by appellee January 11, 1907. Upon inquiry as to the rate of freight the agent of the initial carrier quoted to appellee a through rate of 37 cents per hundredweight, and issued a shipping contract, showing that such rate, amounting to $74 charges, had been paid. The car was billed at the estimated weight of 20,000 pounds, but, upon being weighed subsequently, was found to actually weigh 24,000 pounds. At the time this shipment moved there was no through rate filed with the Interstate Commerce Commission, between the initial station and the destination. In the absence of such a tariff, the sum of the local rates must govern. The initial carrier had a local rate of 18 cents per hundredweight between Fletcher and Quanah; the Ft. Worth & Denver City Railway had a local rate of 19 cents between Quanah

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

and Amarillo; the appellant, the delivering carrier, had two rates, one of 25 cents and the other of 31 cents, from Amarillo to Bovina, and there was a dispute as to which of the two rates applied to this shipment. Upon application to the Interstate Commerce Commission, it was decided that the lesser of the two rates applied, making a total rate, as held by the Interstate Commerce Commission, of 62 cents per hundredweight. No complaint is made of delay or other injury to the goods, which arrived at Bovina on the 14th day of January, 1907. Upon arrival, and ascertainment of the fact that the car weighed 4,000 pounds more than it was originally billed, the delivering carrier insisted upon $14.80 additional as freight charges. Upon arrival of the car at Bovina on the 14th day of January, 1907, G. H. Porter applied to the defendant's agent for delivery of the car, and to have the same reconsigned to him at Melrose, N. M., offering to pay the $14.80 additional charges. The agent refused to deliver on such terms, and demanded charges at the rate of 65 cents per hundredweight. Appellee at that time declined to pay any more than the rate of 37 cents per hundredweight, as stated in the original contract. The matter was referred to the company's general freight agent at Amarillo, and it is shown by the testimony of Cameron and appellee that, while the matter was pending, the agent demanded first 65 cents per hundredweight, then 68⅓ cents per hundredweight, and the jury so found, and refused to deliver the contents of the car unless the rate demanded in each instance was paid. Defendant's agent testified that he had the appellant's published rates, but did not have the rates from the other two roads, and insisted upon the rate given him by the general freight agent of appellant. Appellees' assignor G. H. Porter, under the advice of counsel refused at all times to pay anything more than the illegal rate of 37 cents per hundredweight until November 9, 1907, when appellant's auditor began the sale of the goods as unclaimed freight, at which time appellee offered to pay at the rate of 62 cents per hundredweight, but refused to pay demurrage and expense of keeping the live stock contained in the shipment. The Interstate Commerce Commission, passing upon the appellee's claim and prayer for reparation, decided that 62 cents was the true through rate at that time, being the sum of the local rates fixed and published by the three carriers, and held, further, that 65 cents was in excess of that total rate, ordering that a 41 cent rate be established and maintained for two years thereafter. It was further ordered that on or before the 25th day of February, 1909, the appellants should pay to appellee and his assignors the sum of $64.80, together with whatever amount was charged and collected for demurrage or warehousing as reparation for excessive and unreasonable rates charged and exacted for the transportation of the car

from Fletcher to Bovina. The property was sold November 9th, and failed to bring enough by $380 to pay the freight, demurrage, and cost of keeping it in the interim.

The trial court submitted the cause upon special issues, which together with the answers of the jury, are as follows:

"No. 1. What rate per hundred pounds was demanded of the shipper by defendant on January 14, 1907, when the car of goods arrived at Bovina, Tex.? Ans. A rate of 65 cents was demanded.

"No. 2. Was more than one rate demanded by the defendant of the shipper or his agent at any time after the arrival of the car at Bovina; if so, how many rates were demanded, and what was each rate demanded? Ans. Yes; two rates, 65 cents and 68⅓ cents.

"No. 3. What was the value of the goods in the car belonging to B. M. Porter, G. H. Porter, and L. Cameron on January 14, 1907, at Bovina, Tex.? Ans. $2,000.00.

"No. 4. What rate, or rates, per hundred pounds did the shipper offer to pay, and when was such offer or offers made? Ans. Thirty-seven cents January 14, 1907, and 62 cents in November, 1907, prior to sale."

For a further statement of the history of the case, reference is made to the Southwestern Reporter, vol. 121, p. 897, and vol. 156, p. 267.

[1] The question of the jurisdiction of the state courts over this controversy is again raised by the first and second assignments. This question has been considered on both the former appeals, and decided by the Second Court of Civil Appeals and by this court adversely to appellant's contention. However, in deference to the earnestness with which the point is again urged, and with the aid of the exhaustive brief furnished us, we have, so far as we are able, again given it a thorough examination. We are now more firmly convinced than ever before that our former ruling is correct. In addition to the authorities cited in the first and second opinions, we are sustained by a number of later cases. Donnelly, Justice, in Detmer-Wallen Co. v. Delaware, L. & W. Ry. Co., 89 Misc. Rep. 252, 153 N. Y. Supp. 287, said:

"* * * There is nothing in the act to indicate that the [state] courts have been deprived of the power to act with respect to complaints that may arise out of the failure of carriers to carry out their contracts of transportation promptly and safely, and properly to perform their duties as common carriers."

In Wolverine Brassworks v. Sou. Pac. Co. (Mich.) 153 N. W. 778, and Coad v. Chicago, St. P., M. & O. Ry. Co. (Iowa) 154 N. W. 396, it is distinctly held that the state courts have jurisdiction of actions brought to recover excessive freight rates collected by the carriers. In our judgment, the controlling authority is Penn. Ry. Co. v. Puritan Coal Mining Co., 237 U. S. 121, 35 Sup. Ct. 484, 59 L. Ed. 867, in which Justice Lamar construed sections 8, 9, and 22 of the Interstate Commerce Act (U. S. Comp. St. 1913, §§ 8572, 8573, 8595), using this language:

"But sections 8 and 9, standing alone, might have been construed to give the federal courts exclusive jurisdiction of all suits for damages

occasioned by the carrier violating any of the old duties which were preserved and the new obligations which were imposed by the Commerce Act. And, evidently, for the purpose of preventing such a result, the proviso to section 22 declared that: 'Nothing in this act contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this act are in addition to such remedies.' That proviso was added at the end of the statute, not to nullify other parts of the act, or to defeat rights or remedies given by preceding sections, but to preserve all existing rights which were not inconsistent with those created by the statute. It was also intended to preserve existing remedies, such as those by which a shipper could, in a state court, recover, for damages to property while in the hands of the interstate carrier, damages caused by delay in shipment; damages caused by failure to comply with its common-law duties, and the like. But for this proviso to section 22 it might have been claimed that, Congress having entered the field, the whole subject of liability of carriers to shippers in interstate commerce had been withdrawn from the jurisdiction of the state courts, and this clause was added to indicate that the Commerce Act, in giving rights of action in federal courts, was not intended to deprive the state courts of their general and concurrent jurisdiction. G., H. & S. A. R. Co. v. Wallace, 223 U. S. 481, 32 Sup. Ct. 205, 56 L. Ed. 516. Construing, therefore, sections 8, 9, and 22 in connection with the statute as a whole, it appears that the act was both declaratory and creative. It gave shippers new rights, while at the same time preserving existing causes of action. It did not supersede the jurisdiction of state courts in any case, new or old, where the decision did not involve the determination of matters calling for the exercise of the administrative power and discretion of the commission, or relate to a subject as to which the jurisdiction of the federal courts had otherwise been made exclusive. Compare Abiline Case, 204 U. S. 439, 446, 27 Sup. Ct. 350, 51 L. Ed. 558, 561, 9 Ann. Cas. 1075; Robinson v. B. & O. Ry. Co., 222 U. S. 506, 32 Sup. Ct. 114, 56 L. Ed. 288."

Further on it is said:

"But if the carrier's rule, fair on its face, has been unequally applied, and the suit is for damages occasioned by its violation or discriminatory enforcement, there is no administrative question involved, the courts being called on to decide a mere question of fact as to whether the carrier has violated the rule to plaintiff's damage. Such suits, though against an interstate carrier for damages arising in interstate commerce, may be prosecuted either in the state or federal courts."

In applying the rule announced, the court also said:

"It [the present suit] is not based on the ground that the Pennsylvania Railroad's rule to distribute in case of car shortage on the basis of mine capacity was unfair, unreasonable, discriminatory, or preferential; but, as shown above, the plaintiff alleged it was damaged by reason of the carrier's failure to furnish it with cars to which it was entitled. In support of that issue of fact the plaintiff relied on the carrier's own rule as evidence. That rule, and the carrier's distribution sheets, showed the number of cars to which the plaintiff, the Berwind-White Company, and other coal companies in the district, were each entitled. The evidence further showed that the plaintiff did not receive that number of cars to which by rule it was thus entitled. So that on the trial there was no administrative question as to the reasonableness of the rule, but only a claim for damages occasioned by its violation in failing to furnish cars. Penn. Ry. Co. v. International Coal Mining Co., 230 U. S. 197, 33 Sup. Ct. 893, 57

L. Ed. 1451 [Ann. Cas. 1915A, 315]. The state and federal courts had concurrent jurisdiction of such claim against an interstate carrier without a preliminary finding by the Commission."

It is clear to us that the cause of action presented in the appellee's pleadings is one "caused by failure to comply with its common-law duties" on the part of appellant; and, in our opinion, the decision of the issues presented, since the determination of the question of what was the correct rate by the Commission, does—

"not involve the determination of matters calling for the exercise of the administrative powers and discretion of the Commission, or relate to a subject to which the jurisdiction of the federal courts had otherwise been made exclusive."

[2] Appellee does not insist that the tariff rate of 62 cents "was unfair, unreasonable, discriminatory, or preferential." On the other hand, prior to the sale of his goods he tendered the amount determined to be due by the Commission, at the rate of 62 cents per hundredweight, which tender was refused by the agent. Nowhere in his pleadings does he attack the rate fixed by the Commission, but, having acquiesced in it, his suit is to recover damages because of the failure of appellant to deliver his goods unless he would pay a greater sum than appellant could legally demand. In our opinion, appellee's refusal to pay more than the contract rate can have no bearing upon the issue, because if he had tendered the sum due at the rate of 62 cents per hundredweight, it would have been refused. Both the carrier and shipper are presumed to know the correct rate, and the controlling fact is the refusal of the appellant's agent to deliver unless appellee should pay an amount exceeding 62 cents. Eastern Ry. Co. of N. M. v. Littlefield et al., 237 U. S. 140, 35 Sup. Ct. 489, 59 L. Ed. 878; Western & A. Ry. Co. v. White Prov. Co., 142 Ga. 246, 82 S. E. 644. The record does not show that appellee ever submitted the issue of its right to recover damages and the amount thereof to the arbitrament of the Commission. If he had, we apprehend, the Commission would have held as it did in Blume v. Wells Fargo Express Co., 15 Interst. Com. Com'n R. 53, and Lansing-Harris Coal Co., Id. 37, that it had no authority to adjudicate such matters. There is therefore, no question of election of remedies in the case.

[3] Appellant again, on this appeal, insists that this is not a suit for conversion. After a careful review of the pleadings, we must adhere to our former ruling. This is simply a case where the delivering carrier demanded an excessive and illegal freight charge, and, upon the refusal of the shipper to pay it, declined to deliver the property, and sold it for the charges. That is, in brief, the substance of the allegations in the appellee's pleadings, which also set up the damages resulting to him, and prays judgment for the amount. We are so thoroughly convinced that this is nothing else than a case of con-

version, we shall not attempt to discuss it further, as we deem the question too well settled by the authorities. Donnell v. C. P. Ry. Co., 109 Me. 500, 84 Atl. 1002, 50 L. R. A. (N. S.) 1172, and authorities cited in note; Davies v. Texas Central Railway Co., 133 S. W. 295; Southern Kansas Ry. Co. v. J. W. Burgess Co., 90 S. W. 189; M., K. & T. Ry. Co. of Texas v. C. H. Rines & Co., 37 Tex. Civ. App. 618, 84 S. W. 1092; Isham v. Greenham, 1 Handy (Ohio) 357; Gates v. Bekins, 44 Wash. 422, 87 Pac. 505; Briggs v. Boston, etc., Ry. Co., 6 Allen (Mass.) 246, 83 Am. Dec. 626; 4 R. C. L. 837; Bouvier's Law Dictionary, 670; 5 Enc. of Law (2d Ed.) 232, 389; 6 Cyc. 474; Brown v. P., B. & W. Ry., 36 App. D. C. 221, 32 L. R. A. (N. S.) 189.

[4] Under the fifth assignment appellant urges the proposition that the court should have directed a verdict in its favor because the evidence shows that the appellant's agent at Bovina demanded only a small amount in excess of the legal rate, and because such demand was honestly made and without any wrongful intent. The fact remains, however, that because appellee did not pay the small amount demanded in excess of the legal rate, the injury to him was in no degree lessened. On this account the appellant refused to deliver his property, and it was sold for the payment of the small amount of excess, together with the charges legally due. It is not contended that the refusal of the company to deliver the goods was prompted by malice; but, where property is sold by a carrier or bailee for the payment of an amount not due, the law conclusively presumes a wrongful intent.

"'Conversion' is any distinct act or dominion, wrongfully exerted over another's property in denial of his right or inconsistent with it." Baldwin v. G. M. Davidson, 143 S. W. 716.

"In determining whether there has been a conversion, the intent with which the defendant acted is, as a general rule, immaterial." 28 Enc. of Law (2d Ed.) 681; Williams v. Deen, 5 Tex. Civ. App. 575, 24 S. W. 536.

[5] According to the weight of authority, good faith on the part of the defendant, in an action of trover and conversion, cannot be shown as a matter of defense. If exemplary damages are claimed, it is admissible upon that question alone in mitigation thereof. White v. Yawkey, 108 Ala. 270, 19 South. 360; Imhoff v. Richards, 48 Neb. 590, 67 N. W. 483; B. & O. Ry. Co. v. O'Donnell, 49 Ohio St. 489, 32 N. E. 476, 21 L. R. A. 117, 34 Am. St. Rep. 579; West Jersey Ry. Co. v. Trenton Car Works, 32 N. J. Law, 517.

This is not a case of the mere detention of property, but, as heretofore stated, the pleadings and evidence show a sale under an illegal claim. Hence the language quoted by appellant from 38 Cyc. 2010, and 13 Enc. Ev. 81–83, have no application. The rights of the parties do not turn upon the motive of the agent. The intent of the company was manifested by his act, which is ratified and affirmed by the sale of the property.

Therefore, it would have been reversible error if the court had directed a verdict, as is contended should have been done under the fifth and sixth assignments.

[6] The seventh assignment is:

"The court erred in refusing to submit to the jury the requested issue as to whether or not defendant's agent at Bovina, when informed by Porter that he desired the car forwarded to Melrose, offered to rebill and send the car forward, letting the charges follow so that Porter could pay the legally chargeable rate for transporting through from Fletcher to Melrose and receive the car at Melrose, because the evidence showed that the defendant's agent did so offer; and, upon a finding that he did, the law would have required a judgment to be rendered in favor of the defendant."

The refusal of appellee to enter into a new contract with the agent at Bovina as to the rates from Fletcher to Melrose does not militate against his right to recover for conversion of his property at Bovina. He was under no legal duty to accept the proposal. If the issue had been submitted and found in favor of appellants, it could have had no bearing upon any issue in the case save that of intent, which we have just held immaterial.

[7] It is urged under the eighth assignment that the court erred in admitting the award of the Interstate Commerce Commission. This award was the result of an application before the Commission for the determination of the question of a proper rate applicable to this shipment. The parties to this suit were also parties to that proceeding; and, under the law, the findings of the Commission were admissible evidence, and are made prima facie evidence of the legality of the rate. The record does not bear appellant out in the statement that the court made the finding of the Commission as to the rate conclusive; on the contrary, it is shown that various rate sheets were offered in evidence. This assignment is also overruled.

[8, 9] The propositions urged under the ninth assignment in substance, are that appellee should not have been permitted to recover the value of the chattels belonging to G. H. Porter, who died in New Mexico, where he was residing, pending the suit, and prior to the time of the trial. Appellee alleged that since bringing the suit G. H. Porter had died intestate, in New Mexico, on the 25th day of December, 1908, unmarried and without issue, and leaving as his heirs at law his father and mother; that said father and mother had conveyed to plaintiff the interest of their deceased son; that there is no administration pending in this state and no need of any. The appellant demurred because the pleading failed to show that there had been such an assignment or conveyance to him of the interest of G. H. Porter as confers upon appellee the legal right to maintain an action for the loss of the property belonging to G. H. Porter. The evidence shows that G. H. Porter died on his claim in New Mexico, December 25, 1908, without issue, and left surviving him his father and

mother, one brother and one sister. The court admitted in evidence, over appellants' objections, a transfer by the father and mother of G. H. Porter of all their interest in the goods owned by G. H. Porter to appellee. The evidence shows that the right of action for the interest of G. H. Porter was based upon the loss of personal property; as such it passed at his death to his mother and father, under the laws of Texas; and, in the absence of proof, to the contrary we must presume that they would inherit it under the laws of New Mexico. It was not necessary for the plaintiff to allege that there was no administration upon the decedent's estate in New Mexico. An administrator appointed in New Mexico could not maintain a suit in Texas. Terrell v. Crane, 55 Tex. 81. Under article 3209, Vernon's Sayles' Civil Statutes, administration proceedings should have been instituted in Texas. More than four years elapsed since the death of G. H. Porter, and it is held in Loyd v. Mason, 38 Tex. 212, that after the expiration of four years from the death of a party, the presumption is that there are no debts against his estate, or, if any, that they are barred by limitation. It is further held that the property belonging to him is presumed to have gone into the possession of the persons entitled to receive it. The law does not require the appellee to allege that there was no administration in New Mexico. Hynes v. Winston, 54 S. W. 1069.

[10] The tenth assignment, that the verdict of the jury is not supported by the evidence, and is contrary to the law and facts, is overruled. The fact that appellee and his attorney purchased most of the property at the sale is of no importance in this appeal.

The eleventh assignment, insisting that the cause of action was barred by limitations, is without merit.

[11] Mrs. Lehman testified by deposition that before moving to New Mexico she and her brother, G. H. Porter, lived with their parents near Fletcher, Okl., and that she helped G. H. Porter pack his property included in the shipment; that it was packed in barrels, boxes, and sacks. She said:

"I can enumerate the various articles of his property which were packed or prepared with my assistance for such shipment, and here is a list of as many of his articles as I can remember" (referring to Exhibit B, attached to the petition).

On cross-examination she said:

"I was present and helped pack the goods and load the wagon with the goods that were shipped from Fletcher to Bovina, testified about in answer to the direct interrogatories, and I testified from what I did and saw myself."

This testimony, with more to the same point, we think shows this witness fully qualified to testify as to the identity of the property. She did not testify as to its value.

The remaining assignments are disposed of by what we have heretofore said, and, finding no reversible error, the judgment is affirmed.